# FORT ATKINSON LOAN & INVESTMENT CO. v. MERCHANDISE BANK & TRUST CO. OF CHICAGO, ILL.

# FORT ATKINSON MORTGAGE LOAN & INVESTMENT CO. v. MYERS.

### Nos. 6116, 6117.

Circuit Court of Appeals, Seventh Circuit.

May 12, 1937.

Sheldon Vance, of Port Atkinson, Wis., and Robert M. Rieser and C. G. Mathys, both of Madison, Wis., for appellant.

George B. Skogmo, of Milwaukee, Wis., and Samuel P. Myers, of Racine, Wis., for appellee Myers.

Abner Goldenson and Thomas P. Riordan, both of Chicago, Ill., for appellee Merchandise Bank & Trust Co.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

These are appeals from decrees of the District Court entered in interpleader actions commenced under subsection (26), section 41, title 28 of the United States Code (28 U.S.C.A. § 41(26). The plaintiffs were insurance companies and they paid into court the proceeds of certain fire insurance policies, making all claimants to such proceeds, defendants. In case No. 6116 the funds involved in this appeal were awarded to the appellee Merchandise Bank & Trust Company, and in No. 6117 the funds involved were awarded to the appellee Peter J. Myers, as trustee. Both causes of action arise from the same or similar situations, were argued together in this court, and may properly be disposed of in one opinion.

The E. R. Peacock Company, one of the defendants in the interpleader suits, was a producer and wholesale dealer in onion sets and other farm products, with its principal place of business in the town of Somers, Kenosha county, Wis. It stored such products with the Racine-Kenosha Warehouse Company, a Wisconsin corporation licensed and operated as a public warehouse under authority of the state of Wisconsin. The latter company in compliance with the requirements of the statute issued to its customers its negotiable warehouse receipts for products stored with it. On April 8, 1935, the said warehouse was completely destroyed by fire as well as most of the contents.

On or about November 1, 1934, the E. R. Peacock Company negotiated a loan with appellant Fort Atkinson Mortgage Loan & Investment Company in the sum of $19,575 represented by twenty-five notes in the amount of $750 each, which money was to be obtained from the loan company as was needed by the borrower in the conduct of its business. At the time money was advanced on said notes, with the exception hereinafter noted, they were each collateralized by a warehouse receipt issued by said warehouse company to the E. R. Peacock Company, representing a certain lot of onions stored in said warehouse and indorsed by the Peacock Company to the loan company. When the onions under twenty-one of the warehouse receipts were stored, they were specifically insured in the amounts of $750 each, with the exception of two lots, one of which was insured for $1,000 and the other for $600. Each of the policies insured a particular warehouse receipt and contained a loss-payable clause in favor of the loan company. No loans were advanced until a warehouse receipt and insurance policy were lodged with the loan company. The sum of $3,000 was first loaned on four of the twenty-five notes without warehouse receipts or special insurance secured by a junior chattel mortgage on certain property, which is here immaterial inasmuch as the proceeds from the property mortgaged was not sufficient to pay a prior mortgage. Eighteen of such receipts with the insurance thereon were in effect at the time of the fire, and the proceeds of such insurance has been paid to the loan company. It seems when onions represented by warehouse receipt were removed or the lot bro-

ken, it was necessary to surrender the receipt and the policy covering such receipt, and at the time of the fire three of such receipts had been surrendered and the insurance canceled. The receipts thus withdrawn were No. 53, 62, and 63, a portion or all of which onions had been disposed of by the Peacock Company and a part of the proceeds remitted to the loan company.

Parties other than the Peacock Company, who are not parties to these appeals, their claims having been settled, had onions and products stored in the warehouse at the time of the fire upon which receipts had been issued, except Peter J. Myers, as trustee for the Somers Farms Company, and one Fred Schultz, appellee in No. 6117, who had delivered onions to the Peacock Company at the warehouse, the former in the value of $789.25, and the latter in the value of $1,335.37, both with the agreement that title did not pass until they were paid for, all of which were destroyed in the fire without payment having been made. The Peacock Company had property of its own destroyed by the fire.

At the time of the fire there was in effect, other than that above referred to, three policies of insurance in which the Peacock Company was named as the insured and which contained no loss payable clause in favor of the loan company; and it is the proceeds of two of these policies involved in No. 6116 and the proceeds of the other policy involved in No. 6117. These policies are referred to as providing general insurance as distinguished from the policies in which certain specified warehouse receipts were insured. Referring to the property insured, they contain the following provision:

"This item shall also cover such stock held in trust or on commission or sold but not delivered."

Also this provision:

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, nor unless commenced within 12 months next after the fire."

At the time of the fire the Peacock Company was indebted to the Merchandise Bank & Trust Company of Chicago, Ill., in the sum of $9,243.64, which at that time was secured by an unrecorded crop mortgage. On the same day as the fire Peacock assigned to said bank all title and interest in two of the policies, the proceeds of which are here involved, and the unrecorded crop mortgage so held by the bank was released. The policies were delivered at the time of the assignment, and it is the proceeds of such policies which the District Court decreed should be paid to the bank.

On April 15, 1935, the Peacock Company likewise assigned all right, title, and interest in the policy involved in No. 6117 to Peter J. Myers, as trustee, for the benefit of the Somers Farms Company in the amount of $789.25 and Fred Schultz in the amount of $1,335.37 representing the stipulated value of the onion sets destroyed in the fire, the title to which remained in said parties; and it is the proceeds of this policy which the District Court decreed paid to said trustee.

While numerous questions of law and fact are raised by appellant in each of these cases, it is our judgment that only two of such questions need be considered. First, it is the contention of the appellant that a portion of the onions represented by warehouse receipts No. 53, 62, and 63, heretofore referred to, of the value of $3,559.70 and a certain lot of onions shipped to Louisville, Ky. (for some reason returned), represented by receipt No. 2 of the value of $1,958.51 were destroyed in the fire, and that said onions, by reason of trust receipts and the contract between appellant and the Peacock Company, were held by the latter in trust, and that by reason of the provisions in the policies as above quoted it was entitled to share in the funds in question; second, that the assignment of the policies made in each case are void for the lack of consideration and therefore appellees are entitled to nothing more than their pro rata share of the funds in question.

The District Court expressly found that the onions in question were not in the warehouse at the time of the fire and that the assignment by the Peacock Company to each of the appellees were for a valuable consideration and without notice of any claim by the appellant to such fund. The law is well settled that such findings by the court below will not be disturbed here if there is any evidence to sustain them. As to the assignment to the bank, there is evidence that a chattel mortgage held by the bank was released and while such

mortgage was not recorded, it was good as between the parties and its release was sufficient consideration. There is also evidence from which it may reasonably be inferred that the bank promised the Peacock Company at the time of the assignment an additional loan, and such loan was actually made a few days later. The consideration for the Myers assignment is more difficult to determine. However, the parties stipulated at the trial that the title to the onions held by him as trustee remained in him, and that they were actually in the warehouse and destroyed in the fire. In the conclusion we have reached as to appellant's other contention, we are of the opinion that appellant is in no position to raise the question of want of consideration as to either of these assignments.

■ After a careful investigation of the record, we reach the conclusion that there was evidence to justify the court below in finding that the onions in controversy were not in the warehouse at the time of the fire. True, the evidence on this question is somewhat confusing and uncertain, but in view of all the facts and circumstances it is just as reasonable to conclude they were not there as that they were. In fact, we gather the very distinct impression that the claim of appellant as to the proceeds here involved was mostly an afterthought. In a letter from appellant to the bank a few days after the fire, it was indicated it relied only on policies of insurance which it then held, which, of course, did not include those in question. When the proof of loss was first made by the Peacock Company, it made no reference in its list of goods destroyed in the fire of the onions on which appellant now bases its claim. Other than some general correspondence which appellant carried on with the insurance companies, there is nothing to indicate that it made any serious claim to any portion of the proceeds from the policies involved.

Appropriate suits were commenced by the appellee in each case a few days before the expiration of twelve months after the fire to recover on said policies, a compromise settlement was effected in each case, and the amounts agreed upon were about to be paid to appellees when, for some reason not here important, the insurance companies deemed it advisable to file the suits of interpleader and pay the proceeds into court. To these actions appellant filed his cross-complaint and for

the first time made any legal effort to recover. From what has been said, it is apparent if it had not been for the legal actions instituted by appellees within the twelve months' provision contained in said policies, as above quoted, there would be no funds here to litigate. While the nonaction on the part of appellant is only a circumstance, yet it lends support to the conclusion reached by the District Court that appellants had no interest in or claim to the proceeds of the insurance in question.

The decrees of the District Court are, therefore, affirmed.